IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROBERT F. MCCOLLOUGH, JR., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| MEDITE CANCER DIAGNOSTICS, INC., | ) |
| DAVID PATTERSON, MICHAEL OTT, and | ) |
| MICHAELA OTT, | ) |
| | ) |
| Defendants. | ) |

## **COMPLAINT**

Plaintiff, Robert F. McCullough, Jr. ("McCullough"), complaining against Defendants, Medite Cancer Diagnostics, Inc. ("Medite"), David Patterson ("Patterson"), Michael Ott, and Michaela Ott, states as follows:

<u>The Parties</u>

1.      McCullough is a citizen of the State of California, residing at 460 Los Cerros, Kentfield, California.  Between April 1, 2006, and November 3, 2016, McCullough was employed as the Chief Financial Officer of Medite, and its predecessor, CytoCore, Inc. ("CytoCore")

2.      Medite is a Delaware corporation with its principal place of business at 4203 SW 34th Street, Orlando, FL  32811, and a research facility located at 888 E. Belvidere Rd,. #306, Grayslake, IL  60030.  Pursuant to an acquisition transaction occurring on or about April 4, 2014, CytoCore became Medite.

3.      Patterson is a citizen and resident of the State of Indiana, residing and working at 11517 Willow Ridge Drive, Zionsville, Indiana.

1

4.      Prior to November 3, 2016, Patterson was named the Chief Executive Officer of Medite.

5.      Michael Ott is a citizen of the Federal Republic of Germany, and has recently resumed his residence there.  Prior to his recent move to the Federal Republic of Germany, Ott resided in the State of Florida.  Until late October, 2016, Michael Ott was the Chief Operating Officer and President of Medite.  On November 3, 2016, he remained the President of Medite.

6.      Michaela Ott is a citizen of the Federal Republic of Germany, and has recently resumed her residence there.  Prior to her recent move to the Federal Republic of Germany, Ott resided in the State of Florida.  Until late October, 2016, Ott was the Chief Executive Officer of Medite.  Between late October, 2016, and November 3, 2016, Ott became the Chief Operating Officer of Medite.

7.      CytoCore was a Delaware corporation with its principal place of business at 414 North Orleans, Chicago, Illinois.

## Subject Matter Jurisdiction

8.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332, as complete diversity of citizenship exists between the Plaintiff and the Defendants, and the amount in controversy exceeds the sum of $75,000.00.

## Venue

9.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) in that a substantial part of the events or omissions giving rise to Plaintiff's claim occurred in this judicial district.

**Background**

10.     On November 20, 2006, McCullough entered into a written employment agreement ("the Agreement") with CytoCore to serve as CytoCore's Chief Financial Officer.  (A true and accurate copy of the Agreement is attached hereto as Exhibit A).

11.     Pursuant to the Agreement, McCullough was obligated to "be in Chicago at such times as [were] necessary for the performance of his duties" (Exhibit A at ¶ 1.3), and, in fact, spent the majority of his working time at CytoCore's office in Chicago through April 2014.

12.     The initial term of the Agreement was twenty-four months from December 1, 2006, through November 30, 2008.  (Exhibit A at ¶ 2.1).  The Agreement continued in effect until "written notice by either party to the other at least thirty (30) days prior to the expiration date."  (*Id.* at ¶ 2.1 and ¶ 5.1)

13.     In the absence of prior written notice of termination by either party, the Agreement automatically renewed for an additional two year terms.

14.     Neither party to the Agreement provided thirty (30) days prior written notice of termination, and the Agreement renewed for additional two year terms effective December 1, 2008, December 1, 2010, December 1, 2012, December 1, 2014, and, as set forth in greater detail herein, effective December 1, 2016.

15.     The Agreement was terminable for cause "in the event of a material breach of any term … and the breaching party's failure to cure such material breach to the [non]-breaching party's reasonable satisfaction with ten (10) business days of written notice."  (Exhibit A at ¶ 2.2)

16.     Written notice pursuant to the Agreement required that notice be "delivered by hand delivery, via U.S. Mail, Certified, with return receipt requested, or via regular U.S. Mail <u>and</u> confirmed facsimile delivery." (<u>Emphasis</u> in original)(Exhibit A at ¶ 7.2).

17.     Medite purported to terminate McCullough effective immediately without any articulated basis via oral notice and email on November 3, 2016.

18.     The Agreement provided that it was made and entered into in Cook County, Illinois, and governed by the laws of the State of Illinois. (Exhibit A at ¶ 7.1).

19.     At all relevant times during the period between April 2014, and November 3, 2016, McCullough had no direct reports, and reported to the CEO (initially Michaela Ott and then David Patterson on the date of his termination) and the COO (Michael Ott and then Michaela Ott on the date of his termination). During this period, the Otts and Patterson exercised complete control over McCullough's employment.

20.     During the course of his employment, CytoCore paid McCullough the compensation he was due between 2006 and 2009.

21.     Beginning in 2009 through the date of his termination, however, McCullough deferred one-hundred (100%) percent of his compensation.

22.     As of November 3, 2016, the purported date of his termination, Medite acknowledges that McCullough was due accrued unpaid wages in the amount of $1,183,506.00.

23.     As of November 3, 2016, McCullough had accrued vacation time with a monetary equivalent of $52,111.00.

24.     Additionally, McCullough had accrued unreimbursed cellular telephone expenses of approximately $7,040.00.

4

25.     Finally, as of November 3, 2016, Medite owed McCullough $50,000.00 for funds he loaned to Medite to help it pay its operating expenses.

26.     Despite McCullough's demand for payment, Medite has refused to pay McCullough *any* of his accrued compensation, vacation time or expenses as his final compensation.

27.     Instead, by email dated November 3, 2016, Medite, through its CEO, David Patterson, demanded that McCullough resign his position and accept the following:

Estimated Payroll accrual $1.1m

Estimated loan advance from Bob $50k

•       Not accept accrue vacation days – in this position as self-responsible and traveled many days to California

•       Payment of the loan advance of estimated $50k repayment in 5 installments of $10k starting at day one (1) following the resignation then paid the first of work day of each month of the settlement, for the final four payments

•       A deduction of $200k from his accrued payroll due to increased auditor expense

•       A reserve of $300k for potential claim risk for 3 years due to recent employee accusation's

•       A conversion of $150k each year for the following 3 years at a conversion price of $1,20 (as it was with the other CytoGlobe [sic] employees) for the remaining balance

Any remaining amount will be paid back in monthly installments of $10k starting the month after the complete repayment of the loan advance
This offer is contingent that you resigns [sic] voluntarily. Otherwise the board will terminate your employment by cause. The company then will freeze the full amount of accruals and his loan advance as reserve for potential claims caused by him.

(11/3/16 Patterson Email attached hereto as Exhibit B).

**Count I – Breach of the Illinois Wage Payment and Collection Act against all Defendants**

28.     Pursuant to Section 5 of the Illinois Wage payment and Collection Act, 820 ILCS 115/5 ("the Act"), an employer shall pay, if possible, the full amount of final compensation due to a terminated employee at the time of termination or on the next regularly scheduled payday.

29.     Additionally, with respect to vacation pay, Section 115/5 of the Act, provides that:

> [W]henever a contract of employment or employment policy provides for paid vacations, and an employee resigns or is terminated without having taken all vacation time earned in accordance with such contract of employment or employment policy, the monetary equivalent of all earned vacation shall be paid to him or her as part of his or her final compensation at his or her final rate of pay and no employment contract or employment policy shall provide for forfeiture of earned vacation time upon separation.

30.     Pursuant to Section 300.640, sub-part b) of the Illinois Administrative Code, the Illinois Department of Labor has provided that "[a]n employer doing business at the time the duty to pay wages or final compensation arises is presumed to have the ability to pay."

31.     At all times relevant hereto, Medite has continued to do business.

32.     Pursuant to Section 300.820 of the Illinois Administrative Code, the Illinois Department of Labor has provided, in relevant part, that "[a] financial loss suffered by an employer … shall not be deducted from an employee's pay unless the employee's expressed written consent is given freely at the time the deduction is made."

33.     The Act and related Administrative Code provisions relating to employer claims against employees are consistent with Illinois common law, which provides that alleged poor performance is not a basis for an employer to withhold and/or recover compensation from an employee. *In re Petersen, 296 B.R. 766, 778-81 (C.D. Ill., 2003).*

34.     Pursuant to Section 2 of the Act, any person or group of persons acting directly or indirectly in the interest of an employer in relation to an employee is also deemed an employer for purposes of the Act, and is jointly and severally liable along with the corporation for a violation of the Act.

35.     Pursuant to Section 13 of the Act, an officer of the employer-corporation who knowingly permits the employer-corporation to violate the provisions of the Act is further deemed to be an employer for purposes of the Act, and is jointly and severally liable along with the corporation for a violation of the Act.

36.     Pursuant to Section 14(a) of the Act, in a civil action, a departing employee is entitled to recover the amount of any such under-payments and damages of 2% of the amount of any such under-payments for each month following the date of payment during which such under-payments remain unpaid.

37.     Further, pursuant to Section 14(a) of the Act, in a civil action, a departing employee shall also recover costs and all reasonable attorneys' fees.

38.     On the date that McCullough was denied his final compensation, David Patterson, and Michael and Michaela Ott ("the Otts") were officers of Medite, and made the determination to withhold McCullough's final compensation.

39.     Pursuant to Section 2 of the Act, Patterson and the Otts acted directly or indirectly in the interest of Medite in relation to the non-payment of the compensation due to McCullough.

40.     Furthermore, pursuant to Section 13 of the Act, Patterson and the Otts knowingly permitted Medite to violate the Act by not paying McCullough the final compensation due to him.

41.     As a proximate result of the foregoing violations of the Act, upon information and belief, McCullough has suffered lost compensation to date in excess of $1,242,657, plus accrued interest, penalties and fees.

WHEREFORE, McCullough prays for an award in his favor and against Medite, Patterson and the Otts in an amount in excess of $1,242,657, together with statutory penalties, prejudgment interest to the date of the award, attorneys' fees, costs, and such other, further and additional relief as the Court may deem just.

### Count II – Breach of Employment Contract against Medite for Past Compensation

42.     Pursuant to Federal Rule of Civil Procedure 10(c), McCullough incorporates by reference the allegations set forth in Paragraphs 1 through 27.

43.     Pursuant to the Agreement, Medite agreed to compensate McCullough for his services and reimburse him for work related expenses.

44.     McCullough fully performed all of his duties and obligations under the Agreement.

45.     Medite breached the Agreement by failing to pay McCullough the compensation and expense reimbursement he was due at the time of his termination.

46.     As a proximate result of Medite's breach, McCullough has sustained damages in excess of $1,242,657, plus accrued interest commencing November 3, 2016.

WHEREFORE, McCullough prays for an award in his favor and against Medite in an amount in excess of $1,242,657, together with costs, and such other, further and additional relief as the Court may deem just.

**Count III – Breach of Employment Contract against Medite for Future Compensation**

47.     Pursuant to Federal Rule of Civil Procedure 10(c), McCullough incorporates by reference the allegations set forth in Paragraphs 1 through 27.

48.     Pursuant to the terms of the Agreement, termination "without cause" required thirty (30) days prior written notice in advance of December 1, 2016, and required Medite to pay McCullough compensation for the duration of the 24 month employment term during which the termination without cause occurred.  (Exhibit A at ¶ 2.1 and ¶ 5.1).

49.     Pursuant to the terms of the Agreement, termination "for cause" required ten (10) business days prior written notice and an opportunity to cure.  (Exhibit A at ¶ 2.2).

50.     On November 3, 2016, Medite purported to terminate McCullough effective immediately without explanation and without providing the written notice provided under the Agreement.

51.     Medite had no good cause to terminate McCullough.

52.     If Medite purported to terminate McCullough without cause, the thirty day notice would have extended beyond December 1, 2016, triggering a new twenty-four month term extending through November 30, 2018, obligating Medite to pay McCullough for the duration of that term.

53.     If Medite purported to terminate McCullough for cause, the termination could not have been effective (if at all given the absence of proper written notice) prior to November 17, 2016.

54.     Regardless of its purported grounds for termination, Medite breached the written notice provisions of the Agreement.

55.     On November 3, 2016, McCullough's annual salary was one hundred and eighty thousand dollars ($180,000.00).

56.     As a proximate result of Medite's breach of the written notice provisions of the Agreement, McCullough has sustained damages of between $6,904.11 (based upon ten business days prior written notice of termination and an opportunity to cure), and $373,315.07 based upon the wages due him between November 3, 2016 and November 30, 2016, and for the duration of his employment term between December 1, 2016, and November 30, 2018.

WHEREFORE, McCullough prays for an award in his favor and against Medite in an additional amount of between $3,835.62 and $373,315.07 together with costs, and such other, further and additional relief as the Court may deem just.

## Count IV – Breach of Unpaid Loan Agreement against Medite

57.     Pursuant to Federal Rule of Civil Procedure 10(c), McCullough incorporates by reference the allegations set forth in Paragraphs 1 through 27.

58.     From time-to-time during the course of his employment with CytoCore, McCullough loaned money to CytoCore to help CytoCore meet its operating expenses.

59.     After the acquisition transaction on April 4, 2014, Medite began to pay McCullough back for the monies loaned to CytoCore, most recently by making a payment of $10,000.00 to McCullough in January 2016.

60.     As of November 3, 2016, Medite still owed McCullough an outstanding principal balance of $50,000.00, which Medite has acknowledged in public filings and Patterson acknowledged in his November 3, 2017 email.  (*See* Exhibit  B).

61.     Medite has refused to repay the loan absent McCullough's "voluntary resignation," which McCullough refused to tender.

10

62.     Medite has breached its obligations under the foregoing loan agreement.

63.     As a proximate result of Medite's breach, McCullough has sustained damages of $50,000.00, and demands interest at the Illinois statutory rate of five percent commencing on November 3, 2016.

WHEREFORE, McCullough prays for an award in his favor and against Medite in an additional amount of $50,000.00 together with interest, costs, and such other, further and additional relief as the Court may deem just.

Dated:  November 14, 2016

Respectfully submitted,


/s Daniel P. Hogan
One of the Attorneys for Plaintiff


Daniel P. Hogan, Esq.
McCabe & Hogan, P.C.
19 South Bothwell, Suite 200
Palatine, IL 60067
Telephone:     (847) 359-6100
Facsimile:     (847) 359-6105
E-mail:         dhogan@mccabehogan.com
Attorney I.D. 6182808